TERRY HANSON
2275 Huntington Dr. #116
San Marino, CA 91108
Phone Number (626) 427-3456
Email: info@hmivideo.com
*Plaintiff In Pro Se*

FILED
CLERK, U.S. DISTRICT COURT
1/16/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: GSA DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY HANSON, | Case No.: 2:24-cv-10466-MAR |
| Plaintiff, | The Honorable Margo A. Rocconi |
| vs. | **THIRD AMENDED COMPLAINT** |
| NEXO CAPITAL INC., | **DEMAND FOR JURY TRIAL.** |
| Defendant. | |

## TABLE OF CONTENTS

1. Introduction……………………………………….………………………1

2. Jurisdiction and Venue……………………………………………………1

3. Parties……………………………………………………………………..2

4. Factual Allegations……………………………………………….……….2

5. First Cause of Action (Declaratory Relief under 28 U.S.C. § 2201)......6

6. Second Cause of Action (Breach of Implied Covenant of Good Faith and Fair Dealing)………………………………………………………………..6

7. Third Cause of Action (Violation of California Unfair Competition Law- Unlawful Prong)……………………………………………………………7

8. Fourth Cause of Action (Violation of California Unfair Competition Law- Unfair Prong)……………………………………………………………….8

9. Fifth Cause of Action (Violation of California Unfair Competition Law- Fraudulent Prong/False Advertising……………………………..10 A

10. Prayer for Relief……………………………………………………………12

11. Jury Demand……………………………………………………………..13

12. Certificate of Service........................................................................14

# INTRODUCTION

1. Plaintiff Terry Hanson brings this action against Defendant Nexo Capital Inc. for deceptive and unlawful business practices in operating its Nexo Crypto Credit platform, resulting in significant financial harm to Plaintiff. Defendant marketed its platform as "safe, regulated, transparent," promising consumers "100% ownership" of their digital assets and "zero fees." These representations were false and misleading, and Plaintiff reasonably relied on them in choosing to deposit and maintain his 226,551 XRP with Nexo. This reliance was reasonable under California law, as courts have recognized that similar representations—such as "100% ownership," "zero fees," and claims of being "safe" or "regulated"—are likely to mislead reasonable consumers. See *Jeong v. Nexo Capital Inc.*, 2022 WL 3590329, at 22–23 (N.D. Cal. Aug. 22, 2022); *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008). Defendants actions, including suspending XRP as a repayment option in bad faith, liquidating Plaintiff's collateral, and misrepresenting ownership rights and fees, violated California law and breached the implied covenant of good faith and fair dealing. Plaintiff seeks declaratory relief, damages, restitution, and injunctive relief to prevent further harm, especially given Defendant's announced reentry to the U.S. market on April 28, 2025.

# JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), as Plaintiff is a California resident, Defendant is a Cayman Islands corporation with its principal place of business in London, England, and the

amount in controversy exceeds $75,000. The Court also has jurisdiction under 28 U.S.C. § 2201 for declaratory relief.

3. Venue is proper in the Central District of California under 28 U.S.C. § 1391, as Plaintiff resides in this District, and a substantial part of the events giving rise to Plaintiff's claims, including interactions with Defendant and the harm suffered, occurred in this District. This Court also has personal jurisdiction over Defendant because Defendant purposefully directed its lending activities and advertising into California, solicited California residents to open Nexo Crypto Credit accounts, and entered into loan relationships with California consumers, including Plaintiff.

## PARTIES

4. Plaintiff Terry Hanson is an individual consumer residing in San Marino, California, and was a customer of Defendant's Nexo Crypto Credit program.

5. Defendant Nexo Capital Inc. is a corporation organized under the laws of the Cayman with its principal place of business in London, England, which operates its crypto-backed lending platform, Nexo Crypto Credit, throughout the United States, including California.

## FACTUAL ALLEGATIONS

6. On August 8, 2019, Plaintiff enrolled in Defendant's Nexo Crypto Credit program, relying on Defendant's representations on its website (www.nexo.io), promotional emails (e.g., titled "Unlock Your Crypto Wealth with Nexo"), and Twitter posts (e.g., @NexoFinance: "Repay your loan anytime with XRP or other assets, no restrictions") that customers could repay loans with XRP, retain 100% ownership of collateral, and incur "#ZeroFees."

7. Plaintiff deposited 226,551 XRP as collateral to secure a credit line, expecting to maintain ownership and repay the loan flexibly with XRP, as advertised.

8. On December 22, 2020, the U.S. Securities and Exchange Commission (SEC) announced an action against Ripple Labs Inc., causing XRP's value to drop from approximately $0.45 to $0.21 per coin.

9. On December 23, 2020, Defendant suspended XRP as a repayment option without prior notice, relying on its "sole and absolute discretion" under the Borrow Terms and Conditions (Trenchev Decl., Ex. 1, Dkt. 14-2). This suspension prevented Plaintiff from curing his loan by repaying with XRP.

10. Defendant's Borrow Terms stated only that before liquidating collateral or taking adverse action, it could proceed "after notifying you," without specifying how, when, or through which channels such notice would be given. This deliberate vagueness allowed Defendant to avoid committing to a clear protocol, leaving consumers uncertain about whether they would receive timely or reliable warnings before liquidation or suspension of repayment.

11. At the same time, Defendant marketed a "reliable multi-channel notification system," representing that customers would be protected through redundant communication channels. In practice, the system malfunctioned: messages were batched together rather than sent in real time, reference emails were never delivered, and in one instance Plaintiff received only thirteen minutes of warning before liquidation. At the critical time, Plaintiff was traveling and could not rely on receiving a text to a particular device, but any of his devices would have displayed an email notice had one been sent. By failing to deliver the promised emails,

Defendant eliminated the redundancy it advertised and left Plaintiff without meaningful opportunity to protect his collateral. Defendant has since abandoned email notifications altogether and now relies solely on text messages, underscoring that the marketed "multi-channel" redundancy was never effectively provided.

12. Plaintiff reasonably relied on Defendant's advertising and assurances, including representations of "100% ownership," "zero fees," regulatory compliance, and the promised redundancy of reliable multi-channel notifications, in deciding to deposit and maintain his 226,551 XRP collateral on the Nexo platform.

13. As a direct result of Defendant's misleading practices and system failures, Plaintiff suffered concrete economic injury, including the liquidation of 226,551 XRP, the imposition of a $1,052.44 liquidation fee, and the loss of related digital assets. Plaintiff was deprived of any meaningful opportunity to protect his collateral because the promised notice system failed at the critical moment.

14. Defendant's actions caused Plaintiff to lose 226,551 XRP, $630.36 USDT, $22.05 USDC, and the $1,052.44 liquidation fee. Plaintiff reserves the right to quantify the monetary value upon discovery.

15. Defendant operated its Nexo Crypto Credit service without a California finance lender license, violating California Finance Law (Cal. Fin. Code § 22100 et seq.), as confirmed by a 2022 California Department of Financial Protection and Innovation (DFPI) cease-and-desist order and a January 19, 2023, $45 million SEC settlement. These actions led to Defendant's temporary exit from the U.S. market.

16. Defendant's advertisements, including its website (accessed June 1, 2020, www.nexo.io), whitepaper (April 2018), emails (e.g., November 15, 2020), Twitter posts (e.g., July 15, 2020), and a YouTube interview (August 15, 2018, youtube.com/nexo-official), falsely claimed:

- Customers retained "100% ownership" of collateral, while the Borrow Terms allowed Defendant to claim ownership.

- "#ZeroFees" for the Nexo Crypto Credit service, despite charging liquidation fees.

- A "reliable multi-channel notification system" (e.g., June 15, 2020, email titled "Nexo: Secure Your Crypto Future"), while relying on text-only alerts in December 2020.

17. Plaintiff relied on these misrepresentations when joining the program, believing he would retain ownership, avoid fees, and receive timely notifications. Had he known the truth, he would not have used Nexo's platform. Plaintiff continued to rely on Defendant's ongoing misrepresentations, including those in 2020 advertisements and communications, in maintaining his account and collateral on the Nexo platform through December 2020. Had he known the truth about the fees and notification system, he would have withdrawn his collateral or taken other protective actions before the liquidations.

18. Defendant's announced U.S. reentry on April 28, 2025, heightens the need for injunctive and declaratory relief to protect Plaintiff and other consumers.

# FIRST CAUSE OF ACTION

## (Declaratory Relief under 28 U.S.C. § 2201)

19. Plaintiff incorporates all preceding paragraphs.

20. An actual controversy exists regarding whether Defendant acquires ownership of collateral under the Nexo Crypto Credit contract while a user's loan is outstanding. Defendant's advertisements (e.g., October 20, 2020, @NexoFinance: "Your assets, your ownership") claimed customers retain 100% ownership, but Defendant asserted ownership to liquidate Plaintiff's collateral.

21. Declaratory relief is necessary to clarify legal relations, as this issue is central to Plaintiff's UCL false advertising claim and affects similarly situated users. See *Jeong v. Nexo Financial LLC,* 2022 WL 174236, at *22 (N.D. Cal. Jan. 19, 2022).

22. A judgment declaring that Defendant does not acquire ownership of collateral while the loan is outstanding will resolve uncertainty, especially given Defendant's U.S. reentry plans.

# SECOND CAUSE OF ACTION

## (Breach of Implied Covenant of Good Faith and Fair Dealing)

23. Plaintiff incorporates all preceding paragraphs.

24. The Nexo Crypto Credit contract is illusory because Defendant retained "sole and absolute discretion" to suspend all aspects of the service (Trenchev Decl., Ex. 1, at 3), providing no consideration unless the implied covenant of good faith and fair dealing is applied. See *Jeong v. Nexo Capital Inc*., 2022 WL 3590329, at *8 (N.D. Cal. Aug. 22, 2022).

-6-

PLAINTIFF'S THIRD AMENDED COMPLAINT
2:24-cv-10466-MAR

25. Defendant breached the implied covenant by: - Arbitrarily suspending XRP repayment on December 23, 2020, in bad faith to reduce its own loan exposure while selling XRP for profit. - Providing inadequate text-only notifications during market volatility, preventing Plaintiff from curing the loan. - Liquidating 226,551 XRP, $630.36 USDT, $22.05 USDC, and charging a $1,052.44 fee, frustrating the Borrow Terms' purpose of flexible repayment and customer ownership.

26. These actions were objectively unreasonable and lacked subjective good faith, violating the covenant. See Carma Devs. (Cal.) Inc. v. Marathon Dev. Cal. Inc., 826 P.2d 710, 726 (Cal. 1992).

27. As a result, Plaintiff suffered economic harm, including the loss of his collateral and the liquidation fee.

### THIRD CAUSE OF ACTION

### (Violation of California Unfair Competition Law – Unlawful Prong)

28. Plaintiff incorporates all preceding paragraphs.

29. Defendant's conduct constitutes unlawful business practices under Cal. Bus. & Prof. Code §17200 by:

- Operating as a finance lender without a license, in violation of Cal. Fin. Code §22100 et seq., which is intended to protect consumers from unregulated lending practices, as confirmed by the 2022 California Department of Financial Protection and Innovation ("DFPI") cease-and-desist order and the January 2023 SEC settlement.

- Making affirmative misrepresentations and marketing statements that conveyed it was properly licensed, safe, and compliant, including representations that its services were "regulated," "transparent," and "safe," and that customers maintained "100% ownership" of collateral. These

statements created the false impression that Nexo was authorized to extend loans and liquidate collateral in California, when in fact it was not licensed to do so. As in *Jeong v. Nexo Capital Inc.,* 2022 WL 3590329, at *11 (N.D. Cal. Aug. 22, 2022), where nearly identical allegations survived dismissal, Defendant's misrepresentations about being safe, regulated, and compliant are unlawful under the UCL.

30. Plaintiff reasonably relied on Defendant's representations of lawful compliance in deciding to deposit 226,551 XRP into the Nexo platform. Plaintiff would not have entered or maintained his loan relationship had he known Defendant lacked the required California Finance Lender license and thus operated outside California's regulatory protections. Because Defendant lacked a license, it was prohibited from making or servicing consumer loans in California, and Plaintiff's injuries flowed directly from Nexo's ability to operate outside those statutory safeguards—including deficient notification practices, arbitrary suspension of repayment options, and liquidation of collateral without adhering to the commercial reasonableness obligations imposed on licensed lenders under Cal. Com. Code § 9610(b) and Cal. Fin. Code § 22161.

31. Plaintiff suffered economic injury, including the loss of 226,551 XRP, $630.36 USDT, $22.05 USDC, and the $1,052.44 liquidation fee, caused by Defendant's unlawful practices.

32. Plaintiff seeks restitution, injunctive relief to require licensure and truthful compliance in its marketing statements, and other remedies available under the UCL.

### FOURTH CAUSE OF ACTION

### (Violation of California Unfair Competition Law – Unfair Prong)

33. Plaintiff incorporates all preceding paragraphs.

34. As set forth in 10-11, Defendant's Borrow Terms deliberately avoided committing to any clear notification protocol, and its malfunctioning multi-channel notification system batched alerts, failed to deliver emails, and gave Plaintiff only thirteen minutes of warning. These practices deprived Plaintiff of a fair opportunity to protect his collateral and amplified his losses.

35. Defendant's systemic business practices, including hidden liquidation fees, deficient notifications, and platform-wide delays during market volatility, are unfair under Cal. Bus. & Prof. Code § 17200, as they violate public policy and harm consumers beyond Plaintiff's individual agreement. See *Jeong v. Nexo Capital Inc.,* 2022 WL 3590329, at *12-13 (N.D. Cal. Aug. 22, 2022) (denying dismissal of similar UCL unfair prong claims based on Nexo's practices). Less restrictive alternatives were available that would have protected consumers—such as temporarily suspending liquidations during extreme volatility, or ensuring redundant notice channels—but Defendant deliberately chose not to implement them.

36. These practices caused Plaintiff economic injury, including the loss of his collateral and the $1,052.44 fee, by preventing him from protecting his assets.

37. Legal remedies, such as damages for breach of the implied covenant of good faith and fair dealing, are inadequate because they cannot prevent ongoing harm from Defendant's systemic practices, such as hidden fees and deficient notifications, which continue to threaten consumers, especially with Defendant's announced U.S. reentry on April 28, 2025. Injunctive relief is necessary to mandate

transparent notification systems and fair liquidation protocols to protect Plaintiff and other users from recurring losses. See Summit Est. Inc. v. Cigna Healthcare of Cal., 2017 WL 4517111, at 12 (N.D. Cal. Oct. 10, 2017).

38. Plaintiff seeks injunctive relief to require Defendant to: (a) disclose all fees; (b) implement clear and transparent notification system; and (c) refrain from liquidations during extreme volatility without reasonable safeguards. Plaintiff also seeks restitution of his losses.

### FIFTH CAUSE OF ACTION

**(Violation of California Unfair Competition Law – Fraudulent Prong / False Advertising)**

39. Plaintiff incorporates all preceding paragraphs.

40. Defendant's advertisements were false and misleading, likely to deceive reasonable consumers, including:

   **a. Ownership Claims:** Defendant's website (June 1, 2020, www.nexo.io/, whitepaper (April 2018), emails (December 10, 2020, "Nexo: Your Crypto Platform"), Twitter posts (October 20, 2020, @NexoFinance: "Your assets, your ownership"), and YouTube interview (August 15, 2018) claimed customers retained "100% ownership" of collateral. In reality, Defendant claimed ownership to liquidate Plaintiff's assets, contradicting these representations.

   **b. Liquidation Fees:** Defendant's website (accessed on or about June 1, 2020, www.nexo.io/ fees), whitepaper (April 2018), emails (November 15, 2020, "Enjoy ZeroFees with Nexo"), Twitter posts (July 15, 2020, @NexoFinance: "ZeroFees for all Nexo services"), and YouTube interview (August 15, 2018) claimed

"#ZeroFees." Defendant charged Plaintiff a $1,052.44 liquidation fee, contradicting these representations upon which Plaintiff continued to rely.

    **c. Notification system:** Defendant's website (accessed on or about May 1, 2020, www.nexo.io/support) and email (June 15, 2020, "Nexo: Secure Your Crypto Future") claimed a "reliable multi-channel notification system." Text-only alerts in December 2020— instead of the promised multi-channel system—failed to provide timely notice, causing losses of 226,551 XRP, $630.36 USDT, $22.05 USDC, and a $1,052.44 fee.

41. Plaintiff relied on these misrepresentations when depositing 226,551 XRP over a period of time, expecting ownership, no fees, and reliable notifications. Had he known the truth, he would not have used Nexo's platform.

42. As a direct result of this reliance, Plaintiff suffered significant economic harm, including the liquidation of 226,551 XRP on December 29, 2020, $630.36 in USDT and $22.05 in USDC on December 23, 2020, and the imposition of a $1,052.44 liquidation fee.

43. Defendant's misrepresentations were likely to deceive reasonable consumers. The statements regarding ownership, fees, and notification system reliability were presented in prominent marketing materials without qualifiers (except in the whitepaper, which omitted clear disclaimers). A reasonable consumer viewing the website, emails, or social media posts would not expect collateral ownership to be transferred, fees imposed, or notification systems downgraded to text-only alerts. See *Jeong v. Nexo Capital Inc.*, 2022 WL 3590329, at *22–23 (N.D. Cal. Aug. 22, 2022) (finding Nexo's "100% ownership" claims likely to mislead).

44. Plaintiff seeks an injunction prohibiting Defendant from making false or misleading statements about ownership, fees, and notification systems, by requiring Defendant to:

(a)  provide advance notice for liquidations similar to FINRA standards for reasonable notification in analogous events, to ensure consumers can protect collateral during volatile markets; (b) disclose in advance the specific methods of notification (e.g., email, text message, or both, as well as in-platform alerts) for all material changes to the Nexo Crypto Credit service; and c) refrain from liquidating collateral during periods of extreme market volatility absent reasonable consumer safeguards, such as disclosed notification methods and extended response times. This protects Plaintiff and other users upon Nexo's announced U.S. reentry on April 28, 2025. Plaintiff also seeks restitution of profits from deceptive liquidations, including the $1,052.44 fee, as detailed in Paragraph 39, which were l likely to deceive reasonable consumers. See Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002) (deceptive ads violate UCL); Spiegler v. Home Depot U.S.A., Inc., 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008) (ads without qualifiers are misleading.)

## **PRAY FOR RELIEF**

Plaintiff requests:

1. A declaratory judgment that Defendant does not acquire ownership of collateral while a loan is outstanding.

2. Damages for breach of the implied covenant, including losses from improper liquidations.

3. Restitution under the UCL of 226,551 XRP, $630.36 USDT, $22.05 USDC, and the $1,052.44 fee, or the highest fair market value of XRP since

liquidation, minus any loan balance plus lawful interest under Cal. Civ. Code §§ 3287–3291.

4. Injunctive relief to enjoin Defendant from unfair, unlawful, or deceptive practices and to require fair notification and liquidation protocols.

5. Pre-judgment interest from December 23–29, 2020, and post-judgment interest.

6. Costs of suit, including reasonable litigation expenses.

7. Other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

# CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2025 I electronically served the foregoing document, Plaintiff's **Third Amended Complaint**, via electronic mail on Ian Shelton, Counsel for Defendant Nexo Capital Inc., at the following email address:

   * **Ian Shelton** (ian.shelton@bakermckenzie.com)

   The parties have consented to service of pleadings in this action via electronic mail.

DATED: AUGUST 31ST, 2025

Terry Hanson In Pro Se

/s/ Terry Hanson
Terry Hanson

2275 Huntington Dr. #116
San Marino, CA 91108

**info@hmivideo.com**
**Phone: 626-427-3456**