UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY HANSON,<br>Petitioner,<br>v.<br>NEXO CAPITAL INC.,<br>Respondent. | Case No. 2:24-cv-10466-MAR<br><br>ORDER RE: MOTION TO DISMISS, DKT. 48 |

## I.

## **BACKGROUND**

Plaintiff Terry Hanson ("Plaintiff"), proceeding pro se, filed the Third Amended Complaint ("TAC") on January 16, 2026, bringing claims against Nexo Capital, Inc. ("Defendant") for declaratory relief, breach of the implied covenant of good faith and fair dealing, and for violations of the California Unfair Competition Law ("UCL"). ECF Docket No. ("Dkt.") 46. The Court previously summarized the factual background of this case:

> Plaintiff alleges as follows: before receiving a credit line from Defendant, a customer must agree to the Borrow Terms and Conditions (the "Contract"), which Plaintiff alleges is an adhesion contract. Dkt. 1-3 ("Compl.") ¶ 11. Additionally, Defendant required its customers to "maintain a particular loan-to-value ('LTV') ratio" of 83.3%. Id. ¶¶ 12, 16. For example, if a customer sought a $25,000 credit line, they needed to provide $30,000 worth of cryptocurrency assets as collateral. Id. ¶ 16.

> A customer "could borrow as much cash as they want[ed]" so long as they maintained the specified LTV ratio. Id. ¶ 13. If a customer's collateral lost value and fell below the required LTV ratio, Defendant reserved the right to "liquidate [a customer's] assets to cover the requisite LTV ratio," if, "after giv[ing] notice, [the customer] d[id] not supplement the collateral or pay down the purported loan." Id. ¶ 16.
>
> Plaintiff put up 226,551 XRP, a Ripple Labs Inc. ("Ripple") cryptocurrency, as collateral to secure a credit line from Defendant. Id. ¶¶ 3, 110. On December 22, 2020, the United States Securities and Exchange Commission ("SEC") announced that it had "filed an action against Ripple Labs Inc. and two of its executives . . . alleging that they raised $1.3 billion through an unregistered, ongoing digital asset securities offering." U.S. Secs. & Exch. Comm'n, SEC Charges Ripple and Two Executives with Conducting $1.3 Billion Unregistered Securities Offering (Dec. 22, 2020), https://www.sec.gov/newsroom/press-releases/2020-338; Compl. ¶ 24. The next day the value of XRP dropped precipitously, "from approximately $0.45 to $0.21 [per XRP coin]." [Id.] ¶ 24. As a result of this price drop, Defendant "suspended customers' use of XRP to pay down on loans" that same day. Id. ¶ 25. Starting the next day, Defendant began to liquidate Plaintiff's 226,551 XRP because it fell below Defendant's required LTV ratio. Id. ¶ 27. By December 29, 2020, Defendant liquidated the entirety of Plaintiff's XRP holdings and other assets, and charged Plaintiff a liquidation fee, to pay off his credit line. Id. ¶ 110.

Dkt. 31 at 1–2.

Defendant filed a motion to dismiss the TAC. Dkt. 48. Plaintiff filed an Opposition and Defendant filed a Reply. Dkts. 50 ("Opp."), 52 ("Reply"). The motions have been fully briefed.

The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Dkt. 9. The Court finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons discussed below, **Defendant's motion is GRANTED in part and DENIED in part.**

///

///

**II.**

**STANDARD OF REVIEW**

Under Rule 12(b)(6), a party may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A claim should be dismissed under Rule 12(b)(6) if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See, e.g., Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228–29 (9th Cir. 1984), abrogated on other grounds by Neitzke v. Williams, 490 U.S. 319 (1989). Although the plaintiff must provide "more than labels and conclusions," Twombly, 550 U.S. at 555, "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citations and quotation marks omitted). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892–93 (9th Cir. 2011). However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). The court must also construe the pleading in the light most favorable to the pleading party and resolve all doubts in the pleader's favor. See, e.g., Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir.

2005). Pro se pleadings are "to be liberally construed" and are held to a less stringent standard than those drafted by a lawyer. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under Iqbal.").

**IV.**

**DISCUSSION**

The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A plaintiff can make out a UCL claim under either the "unlawful," "unfair," or "fraudulent" prong. Cruz v. Progressive Cas. Ins. Co., No. CV 20-10966-DSF (SKx), 2021 WL 1557750, at *2 (C.D. Cal. Feb. 5, 2021) (citing Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co., 973 P.2d 527, 540 (Cal. 1999)).

**A. THE TAC FAILS TO STATE A CLAIM UNDER THE UNFAIR PRONG**

"The unfair prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law." Cappello v. Walmart, Inc., 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) (citing Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 943 (Cal. 2003)). "The UCL does not define the term unfair and the proper definition of unfair conduct against consumers is currently in flux among California courts." Ajzenman v. Off. of Comm'r of Baseball, 407 F. Supp. 3d 1067, 1080 (C.D. Cal. 2020) (quoting Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1169 (9th Cir. 2012)) (cleaned up). "Some California courts apply a balancing test, which requires courts to 'weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim'." Cappello, 394 F. Supp. 1023 (quoting Davis, 691 F.3d at 1169). Other California courts utilized the so-called "tethering" test, which determines whether the unfairness to the consumer is

"tethered to some legislatively declared policy…" Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 735 (9th Cir. 2007) (quoting Cel-Tech, 973 P.2d at 565).

The TAC alleges "Defendant's systemic business practices, including hidden liquidation fees, deficient notifications, and platform-wide delays during market volatility, are unfair" under CFL Section 17200 "as they violate public policy and harm consumers beyond Plaintiff's individual agreement." TAC ¶ 35. The TAC alleges injunctive relief is necessary to mandate transparent notification systems and fair liquidation protocols to protect Plaintiff and other users from recurring losses. Id. ¶ 37.

Defendant argues that Plaintiff's claim as to Defendant's notification systems should be dismissed because the Court previously dismissed Plaintiff's contract claim based on the finding that Defendant complied with any pre-liquidation notice provisions in the terms and conditions, Mot. at 7, because Plaintiff does not plausibly allege he experienced any deficient notifications or platform-wide delays, id. at 7, and because Plaintiff "cannot end-run the Court's ruling by arguing it would be "unfair" unless he received even more notifications, or a different amalgam of notifications, than the contract required," id. at 10. Defendant also argues that Plaintiff's allegation regarding "systemic business practices" is "too vague and ambiguous" to state a claim. Id. at 10.

Plaintiff argues that contractual compliance does not bar UCL liability. Opp. at 4–5 (citing Cel-Tech, 20 Cal. 4th at 180; Zhang v. Superior Court, 57 Cal. 4th 364, 380 (2013); McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006); Gutierrez v. Wells Fargo Bank, N.A., 704 F.3d 712, 726 (9th Cir. 2012)). He also argues that the fact he received some notifications does not preclude his claim that Defendants' business practice is unfair. Id. (citing Williams v. Gerber Prods. Co., 552 F.3d 934, 939 (9th Cir. 2008)).

A business practice can be unfair "regardless of the adequacy of [the] breach of contract allegations." Jeong v. Nexo Cap. Inc., No. 21-CV-02392-BLF, 2022 WL 3590329, at *12 (N.D. Cal. Aug. 22, 2022). Further, "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer." Williams 552 F.3d at 938–39 (citing Linear Technology Corp. v. Applied Materials, Inc., 152 Cal.App.4th 115, 134–35 (2007)). However, Plaintiff does not adequately plead facts sufficient to state a claim that "the utility of the defendant's conduct [is outweighed by] the gravity of the harm to the alleged victim" nor does Plaintiff "tether" the alleged unfair practices to a specific public policy. Lozano, 504 F.3d at 735. Accordingly, Plaintiff's claim under the "unfairness" prong is dismissed with leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc).

**B. THE TAC STATES A CLAIM UNDER THE FALSE ADVERTISING PRONG**

"[T]o state a claim under . . . the UCL . . . based on false advertising or promotion practices, it is necessary only to show that members of the public are likely to be deceived." Kasky v. Nike, Inc., 45 P.3d 243, 250 (Cal. 2002). "Whether the public is likely to be deceived is viewed through the lens of a 'reasonable consumer'." Jeong, 2022 WL 174236, at *25 (quoting Davis, 691 F.3d at 1169). "Whereas a common law fraudulent deception must be (1) actually false, (2) known to be false by the perpetrator, and (3) reasonably relied upon by a victim (4) who incurs damages, none of these elements are required to state a claim for injunctive relief under the UCL." Id. (citing Davis, 691. F.3d at 1169).

"Actual reliance is a required element for standing to bring suit under the UCL." See Corbett v. PharmaCare U.S., Inc., 567 F. Supp. 3d 1172, 1185 (S.D. Cal. 2021). A plaintiff must allege that he viewed and relied on advertisements or websites

before he suffered his loss. See Letizia v. Facebook Inc., 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (collecting cases requiring "plaintiffs to allege they actually saw and relied on alleged misrepresentations" to bring UCL claim based on false advertising).

**1. Liquidation fees**

The Court granted Plaintiff leave to amend his claims of false advertising regarding liquidation fees, specifically to plead the "time," and "place," of the allegedly false representations. Dkt. 31 at 24. Defendant argues that Plaintiff still fails to state a claim as to liquidation fees because the TAC does not identify the advertisement with the required specificity or explain why it is false. Mot. at 11. The TAC alleges:

> Defendant's website (accessed on or about June 1, 2020, www.nexo.io/fees), whitepaper (April 2018), emails (November 15, 2020, "Enjoy ZeroFees with Nexo"), Twitter posts (July 15, 2020, @NexoFinance: "ZeroFees for all Nexo services"), and YouTube interview (August 15, 2018) claimed "#ZeroFees." Defendant charged Plaintiff a $1,052.44 liquidation fee, contradicting these representations upon which Plaintiff continued to rely.

TAC ¶ 40. Plaintiff has plead the "time, place, and specific content of the false representations" of the claim that Defendant advertised "#ZeroFees." Fed. R. Civ. P. 9. Defendants argue that the only quotation of the fee advertisement is a generic reference to "zero fees," but that these statements were attached to advertisements about specific Nexo services, not liquidations. They argue:

> [Plaintiff] has not shown that any of the actual fee advertisements attached to these hashtags are about liquidation fees. Liquidation is not a service that Nexo offers its customers; it is a contractual right that Nexo could exercise if a customer breaches the required loan-to-value (LTV) ratio. Nexo advertised no fees related to services it offered to its customers—such as credit line origination, the earn interest product, and various platform perks. The hashtag was associated with those services.
>
> Mot. at 11.

While Plaintiff has not identified the full text of the ads, he pleads the specific false statement – "ZeroFees" – along with the "when" (e.g. June 1, 2020) and

"where" (e.g. Defendant's website) of the statements. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged") (citing Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997)). Under Rule 9(b), allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Thomas v. Costco Wholesale Corp., No. 5:12-CV-02908 EJD, 2013 WL 1435292, at *3 (N.D. Cal. Apr. 9, 2013) (citing Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Here, Defendants are on notice of the particular misconduct alleged to constitute fraud. Defendant's arguments regarding the context of the "zero fees" claims are not appropriately resolved at the Motion to Dismiss stage.[1] The Court must assume the allegations in the TAC are true and must resolve doubts in Plaintiff's favor. Iqbal, 556 U.S. at 678; Berg, 412 F.3d at 1125. The Court therefore concludes that Plaintiff has plausibly stated a claim based on Defendant's claim of "ZeroFees."

**2. Reliable multi-channel notification system**

Plaintiff alleges false advertising regarding Defendant's claims of "reliable multi-channel notification system." See TAC ¶40(c). The TAC states:

> Defendant's website (accessed on or about May 1, 2020, www.nexo.io/support) and email (June 15, 2020, "Nexo: Secure Your Crypto Future") claimed a "reliable multi-channel notification system." Text-only alerts in December 2020- instead of the promised multi-channel system-failed to provide timely notice, causing losses of 226,551 XRP, $630.36 USDT, $22.05 USDC, and a $1,052.44 fee.

---

[1] In the Ninth Circuit, "a court may consider evidence on which a complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). However, here Defendants do not attach the central document—their website—and thus the Court can only determine whether the pleadings sufficiently state a claim.

Id.

Defendant argues that Plaintiff's allegations do not meet the Rule 9 heightened pleading standard. Defendant argues "the reference to the support landing page is generic and does not quote any advertising about preliquidation notifications." Mot. at 10. Defendant argues, "[w]hile [Plaintiff] purports to quote five words from the email—"reliable multi-channel notification system"—he does not quote enough of the email to know what it is about or why it is allegedly false." Id. Further, Defendant argues that Plaintiff "admits that he received eight "multi-channel" warnings before liquidation—so he does not plausibly allege falsity with specificity as required by Rule 9." Id.

Plaintiff argues that receipt of some notifications does not preclude his claim that Defendant's business practice is misleading or unfair. Opp. at 6. He argues, "[a] system may exist yet still be unreliable, delayed, or materially different from what was represented. Whether Defendant's practices were unfair or misleading depends on how they operated in reality, not merely on whether some notifications were sent." Id. at 6–7. The TAC alleges that:

> Defendant marketed a "reliable multi-channel notification system," representing that customers would be protected through redundant communication channels. In practice, the system malfunctioned: messages were batched together rather than sent in real time, reference emails were never delivered, and in one instance Plaintiff received only thirteen minutes of warning before liquidation. At the critical time, Plaintiff was traveling and could not rely on receiving a text to a particular device, but any of his devices would have displayed an email notice had one been sent. By failing to deliver the promised emails Defendant eliminated the redundancy it advertised and left Plaintiff without meaningful opportunity to protect his collateral.

TAC ¶ 11.

The Court agrees that Plaintiff has met the Rule 9 standard. Plaintiff identifies the "who" (Defendant), "what" ("reliable multi-channel notification system"), "when"

(May 1, 2020), "where" (website), and "why" (delayed or missing emails).[2] Therefore, Plaintiff has plausibly stated a claim regarding the "reliable multi-channel notification system."

**3. Reliance**

While Plaintiff does not specifically plead that he saw or relied on specific emails, twitter posts, or YouTube videos, Plaintiff pleads that he accessed Defendant's website on or about May 1, 2020, and on or about June 1, 2020. Plaintiff alleges that the website contained the allegedly fraudulent statements. TAC ¶ 40. Plaintiff also alleges that:

> Plaintiff relied on these misrepresentations when joining the program, believing he would retain ownership, avoid fees, and receive timely notifications. Had he known the truth, he would not have used Nexo's platform. Plaintiff continued to rely on Defendant's ongoing misrepresentations, including those in 2020 advertisements and communications, in maintaining his account and collateral on the Nexo platform through December 2020. Had he known the truth about the fees and notification system, he would have withdrawn his collateral or taken other protective actions before the liquidations.

TAC ¶ 17. Although Plaintiff does not allege that he saw or viewed the emails, whitepaper, twitter posts, or YouTube video referenced in the TAC, this deficiency is immaterial as he alleges that he accessed the relevant website pages, that the website made the allegedly misleading statements, and that he relied on the claims made on the website. Therefore, the Court denies Defendant's motion to dismiss Plaintiff's false advertising claims based on a lack of reliance. Bergeron v. Monex Deposit Co.,

---

[2] While Defendant argues that Plaintiff cannot allege falsity because he received "multiple text and email notifications," they also attach screenshots of messages sent to Plaintiff on December 28, 2020 which explicitly reference a separate email message, Mot. at 9, and Plaintiff alleges he did not receive any emails referenced in those messages. See SAC at 5; Royal Primo Corp. v. Whitewater W. Indus., No. 15-cv-04391-JCS, 2016 WL 1718196 (N.D. Cal. July 29, 2016) ("when evaluating an amended complaint, '[t]he court may also consider the prior allegations as part of its 'context-specific' inquiry"). Defendant does not appear to dispute that Plaintiff did not receive the emails referenced in the December 28, 2020 text messages or provide evidence that Plaintiff did in fact receive "reliable multi-channel" notifications before the liquidation of his XRP on December 29, 2020. See Mot. at 8–9.

No. SACV 17-1968 JVS (DFMx), 2020 WL 3655495, at *4 (C.D. Cal. Apr. 29, 2020) (granting motion to dismiss where "[t]he FAC does not allege what ads [plaintiff] saw, the statements made in the ads, or approximately when [plaintiff] saw the ads.").

## V.

## ORDER

**IT IS THEREFORE ORDERED**:

(1) Defendant's motion to dismiss, Dkt. 48, is **GRANTED** with respect to Claim Four;

(2) Claims Four is **DISMISSED** with leave to amend; and

(3) Defendant's motion is **DENIED** with respect to Claim Five.

Dated: July 27, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge