Terry Hanson
2275 Huntington Dr. #116
San Marino, CA 91108
Telephone: (626) 427-3456
Email: info@hmivideo.com
Plaintiff, Pro Se

FILED
CLERK, U.S. DISTRICT COURT
8/10/26
CENTRAL DISTRICT OF CALIFORNIA
BY ev DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY HANSON,<br><br>Plaintiff,<br><br>vs.<br><br>NEXO CAPITAL INC.,<br><br>Defendant. | CASE NO. 2:24-cv-10466-MAR<br><br>The Honorable Margo A. Rocconi<br><br>**FOURTH AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS


1. Introduction
2. Jurisdiction and Venue
3. Parties
4. Factual Allegations
5. First Cause of Action (Declaratory Relief under 28 U.S.C. § 2201)
6. Second Cause of Action (Breach of Implied Covenant of Good Faith and Fair Dealing)
7. Third Cause of Action (Violation of California Unfair Competition Law – Unlawful Prong)
8. Fourth Cause of Action (Violation of California Unfair Competition Law – Unfair Prong)
9. Fifth Cause of Action (Violation of California Unfair Competition Law – Fraudulent Prong / False Advertising)
10. Prayer for Relief
11. Jury Demand
12. Certificate of Service
13. Exhibit A – DFPI Consent Order (January 14, 2026)

# INTRODUCTION

1. Plaintiff Terry Hanson brings this action against Defendant Nexo Capital Inc. for deceptive and unlawful business practices in operating its Nexo Crypto Credit platform, resulting in significant financial harm to Plaintiff. Defendant marketed its platform as "safe, regulated, and transparent," promising consumers "100% ownership" of their digital assets and "zero fees." These representations were false and misleading, and Plaintiff reasonably relied on them in choosing to deposit and maintain his 226,551 XRP with Nexo. This reliance was reasonable under California law, as courts have recognized that similar representations—such as "100% ownership," "zero fees," and claims of being "safe" or "regulated"—are likely to mislead reasonable consumers. *See Jeong v. Nexo Capital Inc.*, 2022 WL 3590329, at *22–23 (N.D. Cal. Aug. 22, 2022); *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008). Defendant's actions, including suspending XRP as a repayment option in bad faith, liquidating Plaintiff's collateral, and misrepresenting ownership rights and fees, violated California law and breached the implied covenant of good faith and fair dealing. Plaintiff seeks declaratory relief, damages, restitution, and injunctive relief to prevent further harm, especially given Defendant's announced reentry to the U.S. market on April

28, 2025.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) because Plaintiff is a California resident, Defendant is a Cayman Islands corporation with its principal place of business in London, England, and the amount in controversy exceeds $75,000. The Court also has jurisdiction under 28 U.S.C. § 2201 for declaratory relief.

3. Venue is proper in the Central District of California under 28 U.S.C. § 1391, because Plaintiff resides in this District, and a substantial part of the events giving rise to Plaintiff's claims, including interactions with Defendant and the harm suffered, occurred in this District. This Court also has personal jurisdiction over Defendant because Defendant purposefully directed its lending activities and advertising into California, solicited California residents to open Nexo Crypto Credit accounts, and entered into loan relationships with California consumers, including Plaintiff.

## PARTIES

4. Plaintiff Terry Hanson is an individual consumer residing in San Marino, California, and was a customer of Defendant's Nexo Crypto Credit program.

5. Defendant Nexo Capital Inc. is a corporation organized under the laws of the Cayman Islands with its principal place of business in London, England. Defendant operates its crypto-backed lending platform, Nexo Crypto Credit, throughout the United States, including California.

## FACTUAL ALLEGATIONS

6. On August 8, 2019, Plaintiff enrolled in Defendant's Nexo Crypto Credit program, relying on Defendant's representations on its website (www.nexo.io), promotional emails (e.g., titled "Unlock Your Crypto Wealth with Nexo"), and Twitter posts (e.g., @NexoFinance: "Repay your loan anytime with XRP or other assets, no restrictions") that customers could repay loans with XRP, retain 100% ownership of collateral, and incur "#ZeroFees."

7. Plaintiff deposited 226,551 XRP as collateral to secure a credit line, expecting to maintain ownership and repay the loan flexibly with XRP, as advertised.

8. On December 22, 2020, the U.S. Securities and Exchange Commission (SEC) announced an action against Ripple Labs Inc., causing XRP's value to drop from approximately $0.45 to $0.21 per coin.

9. On December 23, 2020, Defendant suspended XRP as a repayment option without prior notice, relying on its "sole and absolute discretion" under the Borrow Terms and Conditions (Trenchev Decl., Ex. 1, Dkt. 14-2). This suspension prevented Plaintiff from curing his loan by repaying with XRP.

10. Defendant's Borrow Terms stated only that before liquidating collateral or taking adverse action, it could proceed "after notifying you," without specifying how, when, or through which channels such notice would be given. This deliberate vagueness allowed Defendant to avoid committing to a clear protocol, leaving consumers uncertain about whether they would receive timely or reliable warnings before liquidation or suspension of repayment.

11. At the same time, Defendant marketed a "reliable multi-channel notification system," representing that customers would be protected through redundant communication channels. In practice, the system malfunctioned: messages were batched together rather than sent in real time, reference emails were never delivered, and in one instance Plaintiff received only thirteen minutes of warning before liquidation. At the critical time, Plaintiff was traveling and could not rely on receiving a text to a particular device, but any of his devices would have displayed an email notice had one been sent. By failing to deliver the promised emails, Defendant eliminated the redundancy it advertised and left Plaintiff without meaningful opportunity to protect his collateral. Defendant has since abandoned email notifications altogether and now relies solely on text messages, underscoring that the marketed "multi-channel" redundancy was never effectively provided.

12. Plaintiff reasonably relied on Defendant's advertising and assurances, including representations of "100% ownership," "zero fees," regulatory compliance, and the promised redundancy of reliable multi-channel notifications, in deciding to deposit and maintain his 226,551 XRP collateral on the Nexo

platform.

13. As a direct result of Defendant's misleading practices and system failures, Plaintiff suffered concrete economic injury, including the liquidation of 226,551 XRP, the imposition of a $1,052.44 liquidation fee, and the loss of related digital assets. Plaintiff was deprived of any meaningful opportunity to protect his collateral because the promised notice system failed at the critical moment.

14. Defendant's actions caused Plaintiff to lose 226,551 XRP, $630.36 USDT, $22.05 USDC, and the $1,052.44 liquidation fee. Plaintiff reserves the right to quantify the monetary value upon discovery.

15. Defendant operated its Nexo Crypto Credit service without a California finance lender license, violating California Financing Law (Cal. Fin. Code § 22100 *et seq*.), as confirmed by a 2022 California Department of Financial Protection and Innovation (DFPI) cease-and-desist order and a January 19, 2023, $45 million SEC settlement. These actions led to Defendant's temporary exit from the U.S. market.

16. Defendant's advertisements, including its website (accessed June 1, 2020, www.nexo.io), whitepaper (April 2018), emails (e.g., November 15, 2020), Twitter posts (e.g., July 15, 2020), and a YouTube interview (August 15, 2018, youtube.com/nexo-official), falsely claimed:

- Customers retained "100% ownership" of collateral, while the Borrow Terms allowed Defendant to claim ownership.
- "#ZeroFees" for the Nexo Crypto Credit service, despite charging liquidation fees.

- A "reliable multi-channel notification system" (e.g., June 15, 2020, email titled "Nexo: Secure Your Crypto Future"), while relying on text-only alerts in December 2020.

17. Plaintiff relied on these misrepresentations when joining the program, believing he would retain ownership, avoid fees, and receive timely notifications. Had he known the truth, he would not have used Nexo's platform. Plaintiff continued to rely on Defendant's ongoing misrepresentations, including those in 2020 advertisements and communications, in maintaining his account and collateral on the Nexo platform through December 2020. Had he known the truth about the fees and notification system, he would have withdrawn his collateral or taken other protective actions before the liquidations.

18. Defendant's announced U.S. reentry on April 28, 2025, heightens the need for injunctive and declaratory relief to protect Plaintiff and other consumers.

## FIRST CAUSE OF ACTION
**(Declaratory Relief under 28 U.S.C. § 2201)**

19. Plaintiff incorporates all preceding paragraphs.

20. An actual controversy exists regarding whether Defendant acquires ownership of collateral under the Nexo Crypto Credit contract while a user's loan is outstanding. Defendant's advertisements (e.g., October 20, 2020, @NexoFinance: "Your assets, your ownership") claimed customers retain "100% ownership," but Defendant asserted ownership to liquidate Plaintiff's collateral.

21. Declaratory relief is necessary to clarify legal relations, as this issue is

central to Plaintiff's UCL false advertising claim and affects similarly situated users. *See Jeong v. Nexo Financial LLC*, 2022 WL 174236, at *22 (N.D. Cal. Jan. 19, 2022).

22. A judgment declaring that Defendant does not acquire ownership of collateral while the loan is outstanding will resolve uncertainty, especially given Defendant's U.S. reentry plans.

## SECOND CAUSE OF ACTION
## (Breach of Implied Covenant of Good Faith and Fair Dealing)

23. Plaintiff incorporates all preceding paragraphs.

24. The Nexo Crypto Credit contract is illusory because Defendant retained "sole and absolute discretion" to suspend all aspects of the service (Trenchev Decl., Ex. 1, at 3), providing no consideration unless the implied covenant of good faith and fair dealing is applied. *See Jeong v. Nexo Capital Inc.*, 2022 WL 3590329, at *8 (N.D. Cal. Aug. 22, 2022).

25. Defendant breached the implied covenant by:

- Arbitrarily suspending XRP repayment on December 23, 2020, in bad faith to reduce its own loan exposure while selling XRP for profit.

- Providing inadequate text-only notifications during market volatility, preventing Plaintiff from curing the loan.

- Liquidating 226,551 XRP, $630.36 USDT, $22.05 USDC, and charging a $1,052.44 fee, frustrating the Borrow Terms' purpose of flexible repayment and customer ownership.

26. These actions were objectively unreasonable and lacked subjective

good faith, violating the covenant. *See Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 826 P.2d 710, 726 (Cal. 1992).

27. As a result, Plaintiff suffered economic harm, including the loss of his collateral and the liquidation fee.

**THIRD CAUSE OF ACTION**

**(Violation of California Unfair Competition Law – Unlawful Prong)**

28. Plaintiff incorporates all preceding paragraphs.

29. Defendant's conduct constitutes unlawful business practices under Cal. Bus. & Prof. Code § 17200 by:

• Operating as a finance lender without a license, in violation of Cal. Fin. Code §22100 et seq., which is intended to protect consumers from unregulated lending practices, as confirmed by the 2022 California Department of Financial Protection and Innovation ("DFPI") cease-and-desist order and the January 2023 SEC settlement.

• Making affirmative misrepresentations and marketing statements that conveyed it was properly licensed, safe, and compliant, including representations that its services were "regulated," "transparent," and "safe," and that customers maintained "100% ownership" of collateral. These statements created the false impression that Nexo was authorized to extend loans and liquidate collateral in California, when in fact it was not licensed to do so. As in *Jeong v. Nexo Capital Inc.*, 2022 WL 3590329, at *11 (N.D.

Cal. Aug. 22, 2022), where nearly identical allegations survived dismissal, Defendant's misrepresentations about being safe, regulated, and compliant are unlawful under the UCL.

30. Plaintiff reasonably relied on Defendant's representations of lawful compliance in deciding to deposit 226,551 XRP into the Nexo platform. Plaintiff would not have entered or maintained his loan relationship had he known Defendant lacked the required California Finance Lender license and thus operated outside California's regulatory protections. Because Defendant lacked a license, it was prohibited from making or servicing consumer loans in California, and Plaintiff's injuries flowed directly from Nexo's ability to operate outside those statutory safeguards—including deficient notification practices, arbitrary suspension of repayment options, and liquidation of collateral without adhering to the commercial reasonableness obligations imposed on licensed lenders under Cal. Com. Code § 9610(b) and Cal. Fin. Code § 22161.

31. Plaintiff suffered economic injury, including the loss of 226,551 XRP, $630.36 USDT, $22.05 USDC, and the $1,052.44 liquidation fee, caused by Defendant's unlawful practices.

32. Plaintiff seeks restitution, injunctive relief to require licensure and truthful compliance in its marketing statements, and other remedies available under the UCL.

## FOURTH CAUSE OF ACTION

### (Violation of California Unfair Competition Law – Unfair Prong)

33. Plaintiff incorporates all preceding paragraphs.

33.1. On January 14, 2026, the California Department of Financial Protection and Innovation ("DFPI"), the state agency charged with enforcing the California Financing Law ("CFL"), Cal. Fin. Code § 22000 et seq., and the California Consumer Financial Protection Law ("CCFPL"), Cal. Fin. Code § 90000 et seq., entered a Consent Order against Defendant Nexo Capital Inc. (the "Consent Order"). A true and correct copy of the Consent Order, as published in the official records of the DFPI, is attached hereto as Exhibit A and incorporated by reference. The Consent Order is subject to judicial notice under Fed. R. Evid. 201 as an official public record. Defendant acknowledged that the Consent Order is and will be a matter of public record. (Consent Order § II ¶ 27.)

33.2. The Consent Order recites that Defendant is a Cayman Islands corporation formed in 2018 that "does not have—and has never had—a CFL license with the Commissioner" (Id. § I ¶ 4); that on or before July 26, 2018, Defendant began offering consumer and commercial loans to California residents through its crypto-backed lending program by way of Nexo's public website and mobile application (Id. § I ¶ 5); and that the governing loan agreements provided that entities under the Nexo brand, including Defendant, "acquired the ownership title and all attendant rights of ownership of borrowers' collateral" and "could dispose of borrowers' collateral in any manner at its sole and absolute discretion and in Nexo's name only, without further consent required from borrowers." (Id. § I ¶ 6.)

33.3. The Commissioner found (and Defendant neither admits nor denies) that from July 26, 2018, through November 22, 2022, Defendant "engaged in the business of a finance lender by contracting for and originating loans with 5,456 California residents, without first obtaining a CFL license," in violation of Financial Code section 22100. (Id. § I ¶¶ 7, 9.) Plaintiff's entire lending relationship with Defendant fell within this period.

33.4. The Commissioner further found that Defendant did not have specific underwriting policies, and that Defendant generally did not ask for, and generally did not evaluate, borrowers' credit history, existing debt, or expenses. Defendant marketed the absence of credit checks as a selling point. Overcollateralization protected Defendant, not the borrower, and Defendant retained the right to automatically liquidate collateral if the loan-to-value ratio reached or exceeded 83.33%, even through no fault of the borrower. (Id. § I ¶¶ 10–14.) The Commissioner found that Defendant contracted for loans with 5,456 California residents without considering their respective ability to repay their loans, in violation of section 1452 of Title 10 of the California Code of Regulations. (Id. § I ¶ 15.) The Commissioner further determined that Defendant violated Cal. Fin. Code § 90003(a)(1) and (a)(2). (Id. § I ¶¶ 16–20.)

33.5. Pursuant to the Consent Order, Defendant is ordered to desist and refrain from violating the CFL and the CCFPL; shall pay an administrative penalty of $500,000; and shall, before any licensed Nexo entity conducts lending activities in California, notify all Consumers, as that term is defined in § II ¶ 2(a), by text message, electronic mail, and public posting that their Funds will be transferred to

a licensed entity. (Id. § II ¶¶ 3–8.) By its terms, the Consent Order resolves only the Commissioner's claims against Defendant and bars only further proceedings by the Commissioner. (Id. § II ¶ 12.) It does not release or limit any claim of Plaintiff.

34. The following unfair business acts and practices rest on Defendant's own conduct toward Plaintiff, independently of the findings reflected in the Consent Order. Defendant engaged in these acts and practices directed at Plaintiff and California consumers generally:

a. Suspension-and-sale of XRP**.** On December 23, 2020, Defendant suspended customers' ability to use XRP as a repayment instrument while simultaneously treating that same XRP as sufficiently valuable to liquidate and sell—including Plaintiff's 226,551 XRP—in order to reduce its own credit exposure. Defendant thereby prevented Plaintiff from curing his loan with XRP at the moment cure mattered most.

b. Operation of a deficient notification system during liquidation events. As set forth in ¶¶ 10–11, Defendant's Borrow Terms deliberately avoided committing to any clear notification protocol. During the December 2020 volatility, Defendant dispatched batched text messages rather than real-time alerts. On December 23, 2020, Defendant sent three text messages at 2:11p.m. and commenced liquidating Plaintiff's collateral thirteen minutes later, at 2:24 p.m., without delivering the emails to which those texts referred; those referenced emails did not arrive until 5:11 p.m. and 5:18 p.m., hours after the liquidation had occurred. On December 28, 2020, Defendant sent two text messages at 2:37 p.m. directing Plaintiff to emails

that were never sent at all. Defendant liquidated Plaintiff's 226,551 XRP at 1:12 a.m. on December 29, 2020, and sent two further text messages at 6:13 p.m. that day, after the liquidation was complete. Defendant thereby deprived Plaintiff of a meaningful opportunity to protect his collateral.

c. Unlicensed conduct of a lending business without regard to ability to repay. Defendant conducted the lending business through which the foregoing practices occurred without the license required by Cal. Fin. Code § 22100(a) and without the ability-to-repay assessment required by section 1452 of Title 10 of the California Code of Regulations. Defendant never evaluated Plaintiff's credit history, income, or ability to repay before extending or servicing his credit line; it relied instead on overcollateralization and automatic liquidation, marketed the absence of underwriting as a benefit, and liquidated Plaintiff's collateral automatically when the loan-to-value threshold was reached, through no fault of Plaintiff. The DFPI's findings concerning Defendant's California lending program encompass the entire period of Plaintiff's lending relationship with Defendant.

d. Imposition of an undisclosed liquidation fee. Defendant charged Plaintiff a $1,052.44 liquidation fee that was not disclosed in the Borrow Terms, that appeared in no schedule of fees furnished to Plaintiff before or during the term of his credit line, and that Plaintiff had no opportunity to decline or avoid. Defendant deducted the fee from the proceeds of collateral it had itself seized, at a moment when Plaintiff could no longer

withdraw from the transaction. Defendant imposed this fee while marketing the crypto credit product under which the fee was charged with the pervasive "#ZeroFees" representation, as alleged in ¶ 40(b), below.

35. Each of the practices alleged in ¶ 34 is tethered to legislatively declared policies of the State of California. Cal. Fin. Code § 22001(a) directs that the CFL be liberally construed and applied to promote its underlying purposes and policies, which include protecting borrowers against unfair practices by lenders. *Id.* § 22001(a)(4). Licensure is therefore a substantive borrower-protection policy. *See Jeong v. Nexo Capital Inc.*, 2022 WL 3590329, at *20–21 (N.D. Cal. Aug. 22, 2022).

35.1. The suspension-and-sale practice alleged in ¶ 34(a) is tethered to Cal. Fin. Code § 22001(a)(4) and Cal. Com. Code § 9610(b); the notification practices alleged in ¶ 34(b) are tethered to Cal. Com. Code §§ 9610(b) and 9611(b), which require commercially reasonable disposition of collateral and reasonable authenticated notification before disposition; the unlicensed lending practices alleged in ¶ 34(c) are tethered to Cal. Fin. Code §§ 22100(a) and 90003(a)(1)–(a)(2) and section 1452 of Title 10 of the California Code of Regulations; and the undisclosed fee alleged in ¶ 34(d) is tethered to Cal. Fin. Code § 22161, subdivision (b), as in effect in December 2020, which prohibited any person from advertising any statement or representation with regard to the business subject to that division, including the rates, terms, or conditions for making or negotiating loans, that is false, misleading, or deceptive. The Consent

Order reflects the DFPI's determination that Defendant's conduct of this lending business violated Cal. Fin. Code §§ 22100(a) and 90003(a)(1)–(a)(2) and section 1452 of Title 10 of the California Code of Regulations. The remaining policies are pleaded on Plaintiff's own allegations. These statutory duties bound Defendant regardless of the terms of any private agreement.

36. The gravity of the harm from Defendant's practices far outweighs any utility of its conduct. Defendant shifted the entire risk of market declines onto borrowers whose ability to repay it had never evaluated. When XRP's price dropped in December 2020, Defendant suspended XRP as a repayment option while simultaneously liquidating and selling customers' XRP, including Plaintiff's, for its own benefit — and its notification system failed in the manner set forth in ¶ 34(b).

36.1. Any utility of these practices accrued solely to Defendant by allowing it to reduce its own credit exposure quickly while minimizing customers' opportunity to cure. Less harmful alternatives were available and would have served Defendant's stated purpose without shifting the entire loss to Plaintiff: continuing to accept XRP as a repayment instrument, suspending or delaying liquidations during periods of extreme volatility, delivering the redundant notice channels Defendant had advertised, and allowing a reasonable interval between notice and liquidation. Defendant adopted none of them. Nor could Plaintiff reasonably have avoided the injury. Whether XRP remained available as a repayment instrument, and whether and when collateral would be liquidated, were matters within Defendant's exclusive control. Defendant suspended the repayment instrument Plaintiff held in quantity and directed him to emails that arrived only after liquidation or were never

sent at all, as set forth in ¶ 34(b). Plaintiff had no means of learning that liquidation was imminent and no means of curing once XRP was suspended. The resulting harm to Plaintiff — loss of 226,551 XRP, related stablecoins, and a $1,052.44 fee — was severe and not outweighed by any countervailing benefit to consumers or competition.

37. This claim is distinct in theory and scope from Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. The implied covenant claim concerns Defendant's bad-faith exercise of contractual discretion as to Plaintiff individually. This claim concerns Defendant's business practices—unlicensed lending without regard to ability to repay, systemically deficient notifications, the suspension-and-sale of XRP, and undisclosed liquidation fees—which violate legislatively declared policies of the State of California and injure California consumers generally. The statutory duties on which this claim rests could not be waived by the Borrow Terms. Plaintiff lacks an adequate remedy at law, as set forth in ¶¶ 38–38.3.

38. As a direct and proximate result of the unfair business practices alleged herein, Plaintiff suffered injury in fact and lost money or property, including the loss of 226,551 XRP, $630.36 USDT, $22.05 USDC, and payment of a $1,052.44 liquidation fee. Plaintiff continues to maintain an account on the Nexo platform.

38.1. Plaintiff is a "Consumer" as that term is defined in the Consent Order (Exhibit A) § II ¶ 2(a), and his "Funds" as defined in § II ¶ 2(b) are subject to § II ¶¶ 4–5, which direct that Consumer Funds be transferred to Nexo Financial LLC (CFL License No. 60DBO-109416). Neither Defendant's licenses-and-registrations

page, which identifies Nexo Financial LLC as the holder of a Financing Law License, Reference No. 60DBO-109416, issued by the DFPI (accessed on or about August 6, 2026), nor the Platform Terms and Conditions currently published under the Nexo brand, last updated February 2, 2026, identifies the entity that holds Plaintiff's Funds or the terms on which they are held. The licenses page identifies no license held by Defendant, and represents generally that entities under the Nexo brand hold licenses and comply with applicable regulations without distinguishing among them. The Platform Terms do not mention Nexo Financial LLC at all; they identify Nexo US, LLC, a Delaware limited liability company, as the contracting provider, state that the provider does not act as lender of record, and identify Gravitalix Credit LLC as the provider of collateralized credit products, without stating that either entity holds a California Financing Law license. Plaintiff is therefore unable to determine which entity holds his Funds or on what terms. Plaintiff would consider using Defendant's crypto credit services in the future on accurate terms, but has no means of determining whether Defendant's current representations concerning collateral ownership, fees, and notification practices are truthful and compliant with California law, and is therefore unable to make that decision.

38.2. The Consent Order does not redress the conduct for which Plaintiff seeks relief. It requires Defendant to obtain licensure, to desist from further CFL and

CCFPL violations, and to notify Consumers of the transfer of their Funds, but it imposes no requirement concerning advance disclosure of fees, the timing or channels of pre-liquidation notification, or any opportunity to cure before liquidation. The relief Plaintiff seeks is therefore neither duplicative of nor satisfied by the Consent Order.

38.3. Plaintiff seeks injunctive relief requiring Defendant to: (a) clearly disclose all fees in advance; (b) implement commercially reasonable, real-time, multi-channel notification procedures before any liquidation; (c) provide a reasonable opportunity to cure before liquidation where applicable; and (d) make accurate disclosures concerning collateral ownership, fees, and notification practices. Plaintiff also seeks restitution of his losses in the alternative to, and only to the extent that, his legal remedies prove inadequate. Damages for breach of the implied covenant are retrospective and cannot redress Defendant's ongoing and prospective conduct, including its reentry to the U.S. market and the transfer of Consumers' Funds to a Nexo entity conducting California lending.

## FIFTH CAUSE OF ACTION

**(Violation of California Unfair Competition Law – Fraudulent Prong / False Advertising)**

39. Plaintiff incorporates paragraphs 1 through 32 and paragraph 38.1 as though fully set forth herein.

40. Defendant's advertisements were false and misleading, likely to deceive reasonable consumers, including:

a. Ownership Claims: Defendant's website (June 1, 2020, www.nexo.io), whitepaper (April 2018), emails (December 10, 2020, "Nexo: Your Crypto Platform"), Twitter posts (October 20, 2020, @NexoFinance: "Your assets, your ownership"), and YouTube interview (August 15, 2018) claimed customers retained "100% ownership" of collateral. In reality, Defendant claimed ownership to liquidate Plaintiff's assets, contradicting these representations.

b. Liquidation Fees: Defendant's website (accessed on or about June 1, 2020, www.nexo.io/fees), whitepaper (April 2018), emails (November 15, 2020, "Enjoy ZeroFees with Nexo"), Twitter posts (July 15, 2020, @NexoFinance: "ZeroFees for all Nexo services"), and YouTube interview (August 15, 2018) claimed "#ZeroFees." Defendant charged Plaintiff a $1,052.44 liquidation fee, contradicting these representations upon which Plaintiff continued to rely.

c. Notification system: Defendant's website (accessed on or about May 1, 2020, www.nexo.io/support) and email (June 15, 2020, "Nexo: Secure Your Crypto Future") claimed a "reliable multi-channel notification system." Text-only alerts in December 2020— instead of the promised multi-channel system—failed to provide timely notice, causing losses of 226,551 XRP, $630.36 USDT, $22.05 USDC, and a $1,052.44 fee.

41. Plaintiff relied on these misrepresentations when depositing 226,551 XRP over a period of time, expecting ownership, no fees, and reliable notifications. Had he known the truth, he would not have used Nexo's platform.

42. As a direct result of this reliance, Plaintiff suffered significant economic harm, including the liquidation of 226,551 XRP on December 29, 2020, $630.36 in USDT and $22.05 in USDC on December 23, 2020, and the imposition of a $1,052.44 liquidation fee.

43. Defendant's misrepresentations were likely to deceive reasonable consumers. The statements regarding ownership, fees, and notification system reliability were presented in prominent marketing materials without qualifiers (except in the whitepaper, which omitted clear disclaimers). A reasonable consumer viewing the website, emails, or social media posts would not expect collateral ownership to be transferred, fees imposed, or notification systems downgraded to text-only alerts. *See Jeong v. Nexo Capital Inc.*, 2022 WL 3590329, at *22–23 (N.D. Cal. Aug. 22, 2022) (finding Nexo's "100% ownership" claims likely to mislead).

44. Plaintiff seeks an injunction prohibiting Defendant from making false or misleading statements about ownership, fees, and notification systems, by requiring Defendant to: (a) provide advance notice for liquidations similar to FINRA standards for reasonable notification in analogous events, to ensure consumers can protect collateral during volatile markets; (b) disclose in advance the specific methods of notification (e.g., email, text message, or both, as well as in-platform alerts) for all material changes to the Nexo Crypto Credit service; and (c) refrain from liquidating collateral during periods of extreme market volatility absent reasonable consumer safeguards, such as disclosed notification methods and extended response times. This protects Plaintiff and other users upon Nexo's

announced U.S. reentry on April 28, 2025. Plaintiff also seeks restitution of profits from deceptive liquidations, including the $1,052.44 fee, as detailed in Paragraph 40, which were likely to deceive reasonable consumers. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (deceptive ads violate UCL); *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008) (ads without qualifiers are misleading.)

## PRAYER FOR RELIEF

Plaintiff requests:

1. A declaratory judgment that Defendant does not acquire ownership of collateral while a loan is outstanding.

2. Damages for breach of the implied covenant, including losses from improper liquidations.

3. Restitution under the UCL of 226,551 XRP, $630.36 USDT, $22.05 USDC, and the $1,052.44 fee, or the highest fair market value of XRP since liquidation, minus any loan balance plus lawful interest under Cal. Civ. Code §§ 3287–3291.

4. Injunctive relief to enjoin Defendant from unfair, unlawful, or deceptive practices and to require fair notification and liquidation protocols.

5. Pre-judgment interest from December 23–29, 2020, and post-judgment interest.

6. Costs of suit, including reasonable litigation expenses.

7. Other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: August 10, 2026

Respectfully submitted,

By /s/ *Terry Hanson*
Terry Hanson
*Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, I electronically served the foregoing document, Plaintiff's **Fourth Amended Complaint,** via electronic mail on Ian Shelton, Counsel for Defendant Nexo Capital Inc., at the following email address:

- Ian Shelton (ian.shelton@bakermckenzie.com)

The parties have consented to service of pleadings in this action via electronic mail.

DATED: August 10, 2026

By /s/ Terry Hanson
Terry Hanson

*Plaintiff, Pro Se*

2275 Huntington Dr. #116
San Marino, CA 91108
info@hmivideo.com
Phone: 626-427-3456

# EXHIBIT A

Consent Order, In the Matter of the Commissioner of Financial Protection and Innovation v. Nexo Capital Inc. (Cal. Dep't of Fin. Prot. & Innovation, Jan. 14, 2026)

MARY ANN SMITH
Deputy Commissioner
SEAN ROONEY
Assistant Chief Counsel
QUINCY P VIEN (State Bar No. 334617)
Senior Counsel
Department of Financial Protection and Innovation
320 West 4th Street, Suite 750
Los Angeles, California 90013
Telephone: (213) 819-0358
Quincy.Vien@dfpi.ca.gov

Attorneys for Complainant

BEFORE THE DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION

OF THE STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of:<br><br>THE COMMISSIONER OF FINANCIAL PROTECTION AND INNOVATION,<br><br>Complainant,<br><br>v.<br><br>Nexo Capital Inc.<br><br>Respondent. | CONSENT ORDER |

This Consent Order is entered into between the Commissioner of Financial Protection and Innovation (Commissioner and Department) and Nexo Capital Inc. (collectively, the Parties).

I.

**RECITALS**

This Consent Order is made with respect to the following facts:

///

///

///



State of California - Department of Financial Protection and Innovation

### A. Jurisdiction

1. The Commissioner has jurisdiction over the licensing and regulation of persons and entities engaged in the business of finance lending or brokering under the California Financing Law (CFL) (Cal. Fin. Code § 22000 et seq.).

2. The Commissioner also has jurisdiction over the regulation of persons who engage, have engaged, or propose to engage in offering or providing a consumer financial product or service in California and affiliated service providers under the California Consumer Financial Protection Law (CCFPL) (Cal. Fin. Code § 90000 et seq.).

### B. Background

3. "Nexo" is the global brand under which certain business entities organized primarily outside of the United States operate to offer crypto asset products and services (Nexo).

4. Nexo Capital Inc. (Nexo Capital) is a Cayman Islands corporation formed in 2018. Nexo Capital does not have—and has never had—a CFL license with the Commissioner.

5. On or before July 26, 2018, Nexo Capital began to offer consumer and commercial loans to California residents under its crypto-backed lending program, "Crypto Credit Lines". These loans include crypto and fiat money loans with crypto collateral. Nexo Capital offered these loans to California residents by way of Nexo's public website and mobile application, both of which are owned by Nexo Capital.

6. Under the Crypto Credit Lines, borrowers provide crypto assets, including non-fungible tokens, as collateral, receive crypto assets or fiat money as loans, and make payments (for the principal and accrued interest) in accordance with their loan agreements. The loan agreements also provide that while borrowers' loans are outstanding, any holding company, subsidiary, or entity belonging to or under the Nexo brand, including Nexo Capital, (i) acquired the ownership title and all attendant rights of ownership of borrowers' collateral, and (ii) could dispose of borrowers' collateral in any manner at its sole and absolute discretion and in Nexo's name only, without further consent required from borrowers.

///

///

7. The Commissioner's investigation and examination revealed that from July 26, 2018, through November 22, 2022, Nexo Capital contracted for loans with 5,456 California residents, in violation of the CFL and CCFPL, as detailed below.

## C. Findings

The Commissioner, based on his investigation and examination, made the following findings, which Nexo Capital neither admits nor denies:

### California Financing Law

### Unlicensed Finance Lending Activities

8. California Financial Code section 22100 provides, "No person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner."

9. From July 26, 2018, through November 22, 2022, Nexo Capital engaged in the business of a finance lender by contracting for and originating loans with 5,456 California residents, without first obtaining a CFL license from the Commissioner, in violation of Financial Code section 22100.

### Underwriting

10. Nexo Capital did not have specific underwriting policies in place for their consumer and commercial loans to California residents. For example, before originating a loan, Nexo Capital generally did not ask for, and generally did not evaluate, the borrower's credit history, debt, expenses, or documents relating to the borrower's overall financial condition and ability to make timely payments on their loan. Nexo Capital also did not generally evaluate the borrower's debt-to-income ratio.

11. Instead, Nexo Capital required borrowers to overcollateralize their loans, a practice seen in other crypto-backed lending programs.

12. Nexo Capital pitched the absence of certain underwriting procedures as a selling point for its loans. Nexo Capital stated on its website, "With Nexo, there are no credit checks, and nothing is reported to credit agencies. Your credit score will not be affected in any way. This is one of the major benefits of using Nexo."

///

***Failure to Consider the Borrowers' Ability to Repay Loans***

***(Tit. 10, Cal. Code Regs. section 1452)***

13. Section 1452 of Title 10 of the California Code of Regulations provides, "When making or negotiating loans, a finance company shall take into consideration, in determining the size and duration thereof, the financial ability of the borrowers to repay the same, to the end that the borrowers should be reasonably to repay said loans in the time and manner provided in the loan contracts."

14. Nexo Capital's practice of overcollateralizing loans to California borrowers was not a substitute for evaluating a borrower's ability to repay a loan in the time and manner provided in the loan agreement. The extent to which a borrower collateralized their loan concerned Nexo Capital's ability to remain secure as a lender in the event of a default by a borrower (the inability of the borrower to repay). If a borrower defaulted on their loan, Nexo Capital could draw upon the collateral to cover overdue payments. To further protect Nexo Capital's ability to remain secure, if the market value of the crypto collateral drops—including through no fault of the borrower (for example, market forces) —to the point where the loan-to-value ratio for the borrower's loan reached or exceeded 83.33%, Nexo Capital could under its terms automatically liquidate the collateral through a margin call process.

15. From July 26, 2018, through November 22, 2022, Nexo Capital contracted for loans with 5,456 California residents without considering their respective ability to repay their loans, in violation of Section 1452 of Title 10 of the California Code of Regulations.

**California Consumer Financial Protection Law**

16. Under the CCFPL:

a. A "[c]overed person" is, in relevant part, "[a]ny person that engages in offering or providing a consumer financial product or service to a resident of this state." Cal. Fin. Code § 90005(f)(1).

b. A "[c]onsumer financial product or service" is a "financial product or service that is delivered, offered, or provided for use by consumers primarily for personal, family, or household purposes." *Id.* § 90005(e)(1).



State of California - Department of Financial Protection and Innovation

State of California - Department of Financial Protection and Innovation

c. A "[f]inancial product or service" includes, among other things, "[e]xtending credit and servicing extensions of credit[.]" *Id.* § 90005(k)(1).

d. It is unlawful for a "covered person" to "[e]ngage, have engaged, or propose to engage in any unlawful, unfair, deceptive, or abusive act or practice with respect to consumer financial products or services." *Id.* § 90003(a)(1).

e. It is also unlawful for a "covered person" to "offer or provide to a consumer any financial product or service not in conformity with any consumer financial law or otherwise commit any act or omission in violation of a consumer financial law." *Id.* § 90003(a)(2).

f. A "[c]onsumer financial law" is "a federal or California law that directly and specifically regulates the manner, content, or terms and conditions of any financial transaction, or any account, product, or service related thereto, with respect to a consumer." *Id.* § 90005(d).

17. Nexo Capital is a covered person subject to the CCFPL.

18. From July 26, 2018, through November 22, 2022, Nexo Capital offered a consumer financial product or service, in the form of the Crypto Credit Lines, to California residents.

19. The CFL is a consumer financial law within the meaning of California Financial code section 90005(d).

20. Nexo Capital, by committing many violations of the CFL, as set forth above:

a. Has engaged in unlawful acts and practices with respect to a consumer financial product or service, in violation of Financial Code section 90003(a)(1); and

b. Has offered or provided to consumers a financial product or service not in conformity with a consumer financial law or has otherwise committed acts

or omissions in violation of a consumer financial law, in violation of Financial Code section 90003(a)(2).

21. It is the intention of the Commissioner and Nexo Capital to resolve this matter without the necessity of a hearing or other litigation.

NOW, THEREFORE, in consideration of the foregoing, and the terms and conditions set forth herein, the Parties agree as follows:

## II.

## TERMS AND CONDITIONS

1. Purpose. The Commissioner and Nexo Capital intend to resolve this matter for the purpose of judicial economy and expediency and without the uncertainty and expense of a hearing or other litigation. The agreed-upon actions herein shall not be construed as approval for any actions outside the scope of this Consent Order. Nexo Capital neither admits nor denies the facts, findings, and citations under this Consent Order.

2. Definitions. For the purpose of this Consent Order, the terms below shall be defined as follows:

a. "Consumer(s)": A current resident of the state of California who currently has "Fund(s)", as defined under Paragraph 2(b) of Section II, below, (1) on the Nexo platform or (2) otherwise custodied, stored, or held by Nexo Capital or a Nexo affiliate or subsidiary.

b. "Fund(s)": Any and all crypto assets and fiat money (1) deposited by Consumers into the Nexo platform, transferred or otherwise sent by Consumers to the Nexo platform, or received by or otherwise sent to Consumers on the Nexo platform; and (2) remaining on the Nexo platform or otherwise custodied, stored, or held by Nexo Capital or a Nexo affiliate or subsidiary. Funds include, but are not limited to:

i. Crypto assets pledged by Consumers as collateral for loans;

ii. Crypto assets in Consumers' wallets or accounts with Nexo Capital or Nexo affiliates or subsidiaries;

iii. Fiat money in Consumers' accounts with Nexo Capital or Nexo affiliates or subsidiaries; and

iv. Any and all other crypto assets and fiat money belonging to Consumers and remaining on the Nexo platform.

3. Desist and Refrain. Nexo Capital is hereby ordered to desist and refrain from doing the following:

a. Violating the California Financing Law (CFL) (Cal. Fin. Code § 22000 et seq.) and related regulations (10 C.C.R. § 1404 et seq.).

b. Violating the California Consumer Financial Protection Law (CCFPL) (Cal. Fin. Code § 90000 et seq.) and related regulations (10 C.C.R. § 1000 et seq.).

4. Transfer Notice of Consumers' Funds. Within one hundred twenty (120) calendar days of the effective date of this Consent Order, and before Nexo Financial LLC (Nexo Financial) conducts any lending activities in California pursuant to its CFL license (No. 60DBO-109416), Nexo Capital will notify all Consumers that their Funds will be transferred to Nexo Financial and that Nexo Financial is the entity that will conduct lending activities in California pursuant to its CFL license (Transfer Notice). Nexo Capital will implement the following procedures in connection with sending the Transfer Notice:

a. Transfer Notice. Nexo Capital shall (i) send the Transfer Notice, via text message and electronic mail, to each Consumer with Funds on the Nexo platform; and (ii) conspicuously publish the Transfer Notice on Nexo Capital's website (https://nexo.com/) and social media accounts (e.g., Twitter, Facebook, Reddit, and Instagram). The Transfer Notice shall be sent to the Consumer's last known phone number (via text message) and electronic mail address provided on the Nexo platform. The Transfer Notice shall, in pertinent part, say:

> Pursuant to a settlement with the California Department of Financial Protection and Innovation **(insert link to this Consent Order) on (insert effective date of this Consent**



State of California - Department of Financial Protection and Innovation

> **Order)**, we are notifying you that your assets on the Nexo platform are being transferred to Nexo Financial LLC (CFL License No. 60DBO-109416) on **(insert applicable date)**. Any loans made or arranged by Nexo Financial LLC will be pursuant to its California Financing Law license.

Once Nexo Capital issues the Transfer Notice to Consumers, Nexo Capital shall simultaneously provide a copy of the Transfer Notice to Quincy Vien, Senior Counsel, Department of Financial Protection and Innovation, via electronic mail at Quincy.Vien@dfpi.ca.gov.

5. Transfer of Consumers' Funds. Thirty (30) calendar days after the issuance of the Transfer Notice under Paragraph 4 of Section II, above, and before Nexo Financial conducts any lending activities in California, Nexo Capital shall transfer all Funds to Nexo Financial. Once all Funds have been transferred to Nexo Financial, Nexo Capital shall simultaneously provide a written notice to Quincy Vien, Senior Counsel, Department of Financial Protection and Innovation, via electronic mail at Quincy.Vien@dfpi.ca.gov.

6. No Waiver by Consumer. The transfer of Funds under Paragraph 5 of Section II of this Consent Order shall not be conditioned on that Consumer waiving any right.

7. Future Lending Activity. Nexo Capital acknowledges and agrees that any future loans made to California borrowers under the Nexo brand shall be made by Nexo Financial pursuant to its CFL license (No. 60DBO-109416), or by such other entity licensed or exempt from licensing under the CFL.

8. Penalty. Nexo Capital shall pay a penalty of $500,000 (United States dollars) in six installment payments, as follows: (i) an initial payment of $100,000 to be made on February 1, 2026, and (ii) five monthly payments of $80,000 are each to be made on the first of each subsequent month, with payments deferred to the next business day if the first falls on a non-business day. Each penalty payment shall be made payable in the form of a cashier's check, wire transfer, or Automated Clearing House deposit to the Department of Financial Protection and Innovation and transmitted to the attention of Accounting – Litigation, Department of Financial Protection and Innovation, 2101 Arena Boulevard, Sacramento, California 95834. Notice of the



State of California - Department of Financial Protection and Innovation

payment must be concurrently sent to Quincy Vien, Senior Counsel, Department of Financial Protection and Innovation, via electronic mail at Quincy.Vien@dfpi.ca.gov.

9. Waiver of Hearing Rights. Nexo Capital acknowledges that the Commissioner is ready, willing, and able to proceed with the filing of an enforcement action upon the findings contained in this Consent Order. Nexo Capital hereby waives the right to any hearings, and to any reconsideration, appeal, or other right to review which may be afforded under the CFL, CCFPL, California Administrative Procedure Act, California Code of Civil Procedure, or any other provision of law. By waiving such rights, Nexo Capital effectively consents to this Consent Order, including the Order to Desist and Refrain, contained herein, becoming final.

10. Failure to Comply with this Consent Order. Nexo Capital agrees that if the Commissioner (i) determines that Nexo Capital failed to comply with any term(s) of this Consent Order, (ii) provides notice to Nexo Capital pursuant to Paragraph 25 of Section II, and (iii) determines that Nexo Capital has failed to cure the violation(s) within sixty (60) calendar days of its receipt of the notice, or as further agreed to by the Parties, all of the following shall apply:

a. The Commissioner may institute proceedings for any and all matters otherwise resolved under this Consent Order.

b. The Commissioner may avail himself of any and all remedies available under the CFL, CCFPL, California Administrative Procedure Act, California Code of Civil Procedure, or any other provision of law.

11. Information Willfully Withheld or Misrepresented. If the Commissioner discovers that Nexo Capital knowingly or willfully withheld or misrepresented information used for and relied upon in this Consent Order, after providing Nexo Capital with due notice, this Consent Order or any specific paragraphs herein, at the Commissioner's sole discretion, may be revoked and the Commissioner may pursue any and all remedies available under law against Nexo Capital. Nexo Capital reserves any and all rights and defenses should such an action be brought available under law, including, but not limited to, all rights and defenses available under the CFL and CCFPL.

12. Future Actions by the Commissioner. Nexo Capital hereby acknowledges and agrees that the Consent Order is intended to constitute a full, final, and complete resolution of Nexo Capital's alleged violations of the CFL and CCFPL as set forth in Section I (Recitals) above (Violations), and that no further proceedings or actions will by brought by the Commissioner against Nexo Capital or any of its affiliated, or any of their respective partners, owners, officers, shareholders, directors, employees, or successors based on the alleged Violations. Notwithstanding the Commissioner reserves the right to bring any actions against Nexo Capital, or any of its respective partners, owners, officers, shareholders, directors, employees, or successors for any and all unknown violations of the CFL, CCFPL, or any other provision of law. Nexo Capital reserves any and all rights and defenses should such an action be brought available under law, including, but not limited to, all rights and defenses available under the CFL and CCFPL.

13. Assisting Other Agencies. Nothing in this Consent Order limits the Commissioner's ability to assist any other government agency (city, county, state, or federal) with any prosecution, or administrative, civil, or criminal action, brought by that agency against Nexo Capital or any other person based on any of the activities alleged in this matter or otherwise.

14. No Presumption Against Drafter. Each party acknowledges that it has had the opportunity to draft, review, and edit the language of this Consent Order. Accordingly, the Parties intend no presumption for or against the drafting party will apply in construing any part of this Consent Order. The Parties waive the benefit of California Civil Code section 1654 as amended or corresponding provisions of any successor statute, which provide that in cases of uncertainty, language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

15. Independent Legal Advice. Each of the Parties represents, warrants, and agrees that it has had the opportunity to receive independent advice from an attorney(s) and/or representatives with respect to the advisability of executing this Consent Order.



State of California - Department of Financial Protection and Innovation

State of California - Department of Financial Protection and Innovation

16. Headings. The headings for the paragraphs of this Consent Order are inserted for convenience only and will not be deemed a part hereof or affect the construction or interpretation of the provisions hereof.

17. Binding. This Consent Order is binding on all heirs, assigns, and/or successors in interest.

18. Reliance. Each of the Parties represents, warrants, and agrees that in executing this Consent Order, it has relied solely on the statements set forth herein and the advice of its own legal counsel, if represented. Each of the Parties further represents, warrants, and agrees that in executing this Consent Order, it has placed no reliance on any statement, representation, or promise of any other party, or any other person or entity not expressly set forth herein, or upon the failure of any party or any other person or entity to make any statement, representation, or disclosure of anything whatsoever. The Parties have included this clause: (1) to preclude any claim that any party was in any way fraudulently induced to execute this Consent Order; and (2) to preclude the introduction of parol evidence to vary, interpret, supplement, or contradict the terms of this Consent Order.

19. Waiver, Amendments, and Modifications. No waiver, amendment, or modification of this Consent Order will be valid or binding unless it is in writing and signed by each of the Parties. The waiver of any provision of this Consent Order will not be deemed a waiver of any other provision. No waiver by either party of any breach of, or of compliance with, any condition or provision of this Consent Order by the other party will be considered a waiver of any other condition or provision or of the same condition or provision at another time.

20. Full Integration. This Consent Order is the final written expression and the complete and exclusive statement of all the agreements, conditions, promises, representations, and covenants between the Parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings, and discussions between and among the Parties, their respective representatives, and any other person or entity, with respect to the subject matter covered hereby.

21. Governing Law. This Consent Order will be governed by and construed in accordance with California law. Each of the Parties hereto consents to the jurisdiction of such court and thereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in such court.

22. Counterparts. This Consent Order may be executed in one or more separate counterparts, each of which when so executed, shall be deemed an original. Such counterparts shall together constitute a single document.

23. Effect Upon Future Proceedings. If Nexo Capital applies for any license, permit, or qualification under the Commissioner's jurisdiction, or is the subject of any future action by the Commissioner to enforce this Consent Order, then the subject matter hereof shall be admitted for the purpose of such application(s) or enforcement proceeding(s). Notwithstanding the foregoing, Nexo Capital shall not be denied a license, permit, or qualification solely because they have entered into this Consent Order.

24. Voluntary Agreement. Nexo Capital hereby enters into this Consent Order voluntarily and without coercion and acknowledges that no promises, threats, or assurances have been made by the Commissioner or any officer, or agent thereof, about this Consent Order. The Parties each represent and acknowledge that he, she, or it is executing this Consent Order completely voluntarily and without any duress or undue influence of any kind from any source.

25. Notice. Any notice required under this Consent Order shall be provided to each party at the following addresses:

To Nexo Capital:

Craig Warkol
McDermott Will & Schulte LLP
919 Third Avenue
New York, New York 10022
Craig.Warkol@srz.com

To the Commissioner:

Quincy Vien
Senior Counsel
Department of Financial Protection and Innovation
320 West 4th Street, Suite 750
Los Angeles, California 90013
Quincy.Vien@dfpi.ca.gov

26. Signatures. A fax or electronic mail signature shall be deemed the same as an original signature.

27. Public Record. Nexo Capital hereby acknowledges that this Consent Order is and will be a matter of public record.

28. Effective Date. This Consent Order shall become final and effective when signed by all Parties and delivered by the Commissioner's agent via electronic mail to Nexo Capital at the following electronic mail address: legal@nexo.io.

29. Authority to Sign. Each signatory hereto covenants that he/she possesses all necessary capacity and authority to sign and enter into this Consent Order and undertake the obligations set forth herein.

///
///
///

State of California - Department of Financial Protection and Innovation

Dated: January 14 , 2026
Los Angeles, California

KHALIL MOHSENI
Commissioner of Financial Protection and Innovation

By: ______________________________
MARY ANN SMITH
Deputy Commissioner
Enforcement Division

Dated: January 9, 2026

NEXO CAPITAL INC.

By:
______________________________
ANTONI TRENCHEV
Managing Director